Filed 2/10/26  Duboff v. Schermer CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| BONNIE DUBOFF, | B333452 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BC617750) |
| v. | |
| LINDA SCHERMER et al., | |
| Defendants and Appellants. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Robert Broadbelt, Judge.  Affirmed.

Bohm Wildish & Matsen, James G. Bohm; Greines, Martin, Stein & Richland, Cynthia E. Tobisman and Jeffrey E. Raskin for Defendants and Appellants.

Levatolaw and Stephen D. Weisskopf for Plaintiff and Respondent.

Plaintiff and respondent Bonnie Duboff filed this derivative action on behalf of 245 Spalding Partners L.P. (the Partnership), against her sister, Linda Schermer, in Schermer's individual capacity and in her capacity as trustee of three trusts that are limited partners in the Partnership.

The Partnership owns an apartment building in Beverly Hills (the Building). Duboff alleged that Schermer, in her capacity as trustee of the general partner trust, mismanaged the Building. Duboff asserted derivative claims for breach of fiduciary duties to the Partnership and unjust enrichment, in violation of the Corporations Code. Duboff sought dissociation of the general and limited partner trusts of which Schermer is trustee and of Schermer in her individual capacity as a limited partner. Duboff also sought damages. The trial court found in Duboff's favor on all claims, awarding damages and dissociating Schermer and the three trusts as partners.

On appeal, Schermer argues the judgment must be reversed because the case fell within the probate court's exclusive jurisdiction; there was no substantial evidence that Duboff had standing to sue as a limited partner; dissociation of the limited partner trusts and Schermer as a limited partner was an impermissible remedy; and the award of damages was not supported by the evidence and was excessive. We affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

*The Trusts and the Partnership*

In 1983, Sam Schermer and his wife, Lucille, created the Schermer Family Trust.[1] When Lucille died, the family trust was

---

[1] We refer to Linda Schermer as "Schermer" and to the other Schermer family members by their last or full names. Consistent

divided into three trusts: the Surviving Trustor's Trust, the Deceased Trustor's Trust, and the Marital Trust (the Trusts). Sam and Lucille Schermer had three daughters: Duboff, Schermer, and Deborah Scott.[2]

Sam Schermer was the sole trustee of the Trusts. Schermer was designated the successor trustee, and Schermer's cousin, Leland Schermer, was named as successor trustee if Schermer was unable or unwilling to serve. Sam Schermer resigned as trustee in 2014. In August 2014, Schermer became the sole trustee of each trust.

245 Spalding Partners L.P. is a limited partnership. There is no written partnership agreement. The Partnership's sole asset is the Building. Before 2014, Schermer served as property manager of the Building and, in that capacity, she began living rent-free in the Building in 2006.

The Surviving Trustor's Trust was the general partner of the Partnership. All three trusts were limited partners, as were Duboff, Schermer, and Scott. The Trusts owned over 99 percent of the Partnership, with the sisters owning the remaining partnership interests in equal amounts.

**The Probate Proceedings**

Sam Schermer died in March 2015. That month, Schermer initiated probate proceedings, *In re Estate of Samuel Schermer*, case No. BP161462. Duboff and Scott objected to Schermer's request that she be appointed executor of the estate.

---

with many of the legal documents in the record, we refer to Samuel Schermer as "Sam Schermer."

[2]    Scott is not a party to this action.

3

In June 2015, Duboff and Scott filed a petition in probate court for suspension of trustee, appointment of temporary trustee, and removal of trustee. The petition sought the removal of Schermer as trustee of the Surviving Trustor's Trust. The petition asserted, among other things, that Schermer had egregiously mismanaged the Building, resulting in it being "cash flow negative," even though it "should be generating hundreds of thousands of dollars a year." The petition also asserted that Schermer had mismanaged and breached her duties as trustee regarding other family properties and companies. The petition alleged that Schermer had disregarded her responsibilities and obligations as trustee, including by withholding financial records and by failing to provide information about provisions in the trusts that benefitted Sam's heirs. The petition alleged Schermer had demonstrated hostility to family members, creating an untenable situation.

***The Civil Lawsuit***

In April 2016, Duboff filed this lawsuit as a general civil matter. Duboff asserted derivative claims on behalf of 245 Spalding Partners L.P. for breach of fiduciary duties and unjust enrichment. The claims were asserted against the general and limited partners of the Partnership, including Schermer in her individual capacity and as trustee of the Trusts. The complaint alleged that Schermer failed to repair and renovate the Building, failed to lease apartment units and collect rent, failed to provide tax and other financial information to other partners, and misappropriated Partnership funds. It sought damages and dissociation of Schermer in her individual capacity and in her capacity as trustee of the Trusts.

4

Trial proceeded in two phases. The first phase concerned Duboff's standing to bring the claims as a limited partner.[3] Duboff claimed she and her sisters became limited partners through three "gift transfers" of partnership interests that Sam Schermer made in 2008, 2009, and 2010. In the operative statement of decision, issued on June 5, 2020, the trial court credited evidence that Sam Schermer intended to make the three sisters limited partners and Duboff therefore had standing to pursue derivative claims on behalf of the Partnership.

In August and September 2022, the trial court conducted a bench trial on the remaining issues in the case. In October 2023, the court issued a statement of decision finding in favor of Duboff on all claims. The court concluded that Schermer, in her capacity as trustee of the Surviving Trustor's Trust, breached her fiduciary duties to the Partnership "by engaging in grossly negligent and reckless conduct in the management of the 26-unit apartment building . . . self-dealing, intentional misconduct, and a knowing violation of [the] law, and has breached her obligation of good faith and fair dealing in discharging her duties to the Partnership and Duboff . . . ." The court found Schermer failed for over four years to address structural damage in the Building that posed a risk of partial collapse; failed to permanently repair the roof, leading to "massive water damage" to units on the fifth floor; failed to renovate the Building, "costing the partnership

---

[3] There were two first-phase trials. At the conclusion of the first trial, the court ruled that Duboff had standing. However, the judge retired before a statement of decision could be finalized and before the second phase of the proceedings was to take place. Schermer requested and received a mistrial. The parties retried the standing issue in a second trial. The second judge again found that Duboff had standing.

5

millions"; and unreasonably failed to obtain a loan to renovate the Building.

The court found Schermer's misconduct began in at least August 2014. The court also concluded that Schermer, "in her capacity as trustee of the Surviving Trustor's Trust and general partner of the Partnership," had been unjustly enriched and refused to comply with her obligations under the Corporations Code.

The trial court dissociated Schermer in her individual capacity as a limited partner, and in her capacity as trustee of the Trusts, pursuant to Corporations Code section 15906.01.[4] The court further stated that the expulsion and dissociation of Schermer in her capacity of trustee of each trust would have the legal effect of expelling and dissociating the relevant trust, because a trust is not a legal entity and only operates through its trustee. The court entered judgment in favor of Duboff and awarded damages.

Schermer timely appealed.

## DISCUSSION

## I.    The Matter Did Not Fall Within the Probate Court's Exclusive Jurisdiction

Schermer contends the judgment must be reversed because the trial court did not have jurisdiction to adjudicate the complaint. She argues the matter fell within the exclusive jurisdiction of the probate court. We disagree.

---

[4]    All subsequent undesignated statutory references are to the Corporations Code.

6

### A. Procedural background

In August 2017, Schermer filed a notice of related cases regarding this matter and the two probate cases. The trial court summarily rejected the notice, finding the cases were not related.

In September 2017, Schermer filed a motion to relate the three cases pursuant to rule 3.300 of the California Rules of Court. Duboff opposed the motion, arguing that although there was "some overlap in parties and in the underlying facts," the court in the probate matters would evaluate the legal merits of claims that pertained to a trust and the appointment of an executor of an estate under the Probate Code, while the court in the civil action would evaluate claims under the Corporations Code related to limited partnership issues. Duboff also asserted the motion was untimely because she filed her civil complaint in April 2016, over one year earlier, and the parties had already engaged in motion practice and discovery.

The trial court denied the motion, concluding the cases involved different parties and different claims, and they required resolution of distinct factual and legal issues. The court reasoned that one probate case required the determination of the proper executor of Sam Schermer's estate, and the other probate case concerned whether Schermer should be removed as trustee of the Surviving Trustor's Trust due to mismanagement of that trust's properties. In contrast, the civil action was a derivative action on behalf of a limited partnership that sought expulsion and dissociation of its general and limited partners under the Corporations Code, with both Sam Schermer and Schermer accused of wrongdoing. Although the court acknowledged there was some factual overlap in the probate and civil matters, it concluded there would not be a substantial duplication of judicial

resources if the cases proceeded before different judicial officers. The court thus denied the motion to relate the civil and probate cases.

In June 2018, Schermer filed a motion to transfer this matter to the probate court, pursuant to Code of Civil Procedure sections 397 and 398.[5]  For the first time, she argued that the probate court had exclusive jurisdiction over Duboff's civil suit because it involved the internal affairs of a trust and the trial court lacked subject matter jurisdiction.

The trial court denied the motion.  The court observed that Schermer had multiple prior opportunities to challenge jurisdiction, but had not done so until "more than two years after the complaint was filed" in April 2016.  The court thus found the motion to transfer "expressly untimely" under Code of Civil Procedure section 396b, subdivision (a),[6] and "arguably was waived" under other provisions of the Code of Civil Procedure.

---

[5]     Code of Civil Procedure section 397 provides, in relevant part, that a "court may, on motion, change the place of trial in the following cases: [¶] (a) When the court designated in the complaint is not the proper court.  [¶] . . . [¶] (c) When the convenience of witnesses and the ends of justice would be promoted by the change.  [¶] (d) When from any cause there is no judge of the court qualified to act."  Code of Civil Procedure section 398 concerns transfer procedures "[i]f a court orders the transfer of an action or proceeding for a cause specified in subdivisions (b), (c), and (d) of [Code of Civil Procedure] [s]ection 397. . . ."

[6]     Code of Civil Procedure section 396b, provides, in relevant part: "(a) Except as otherwise provided in Section 396a, if an action or proceeding is commenced in a court having jurisdiction

8

The court also denied the motion on its merits, finding that Duboff's complaint was a derivative action under the Corporations Code seeking dissociation of limited and general partners based on breaches of duties owed to a corporate entity and its partners.  It thus did not fall within the exclusive jurisdiction of the probate court as a matter regarding the internal affairs of a trust.  The court observed that the probate court would have concurrent, as opposed to exclusive, jurisdiction, but it declined to transfer the matter because of "how heavily the civil law case has been litigated and how minimally the probate law case has been."  Thus, transfer would "not result in judicial economy."  The court also noted that the "civil case approaches retrial [on the phase one issue of standing] while the probate case has been ordered to trail the civil law case . . . ."

In February 2021, Duboff and Scott filed an ex parte application in the probate court seeking to stay proceedings on their probate petition pending resolution of the civil case.  They asserted that Schermer had intentionally delayed the civil matter

of the subject matter thereof, other than the court designated as the proper court for the trial thereof, under this title, the action may, notwithstanding, be tried in the court where commenced, unless the defendant, at the time he or she answers, demurs, or moves to strike, or, at his or her option, without answering, demurring, or moving to strike and within the time otherwise allowed to respond to the complaint, files with the clerk, a notice of motion for an order transferring the action or proceeding to the proper court, together with proof of service, upon the adverse party, of a copy of those papers.  Upon the hearing of the motion the court shall, if it appears that the action or proceeding was not commenced in the proper court, order the action or proceeding transferred to the proper court."

9

and, since their trust proceeding was trailing the civil matter, it was now approaching the five-year deadline to bring it to trial. Duboff and Scott also argued that staying the probate matter would promote judicial efficiency because the civil action "will greatly impact the issues" in the probate proceeding and "could be dispositive of at least some issues." The probate court overruled Schermer's objections to the ex parte and granted the stay request.[7]

In March 2021, Schermer filed a motion renewing her original request to relate the cases. Schermer cited Duboff's success in staying Duboff's and Scott's probate matter, in part based on overlap between the civil and probate proceedings. The trial court denied the motion.[8]

## B.  Applicable legal principles

Probate Code section 17000, subdivision (a), provides that "[t]he superior court having jurisdiction over the trust pursuant to this part has exclusive jurisdiction of proceedings concerning the internal affairs of trusts." Probate Code section 17200, subdivision (b)(1), sets forth a nonexclusive list of proceedings that concern the internal affairs of a trust. (*Babbitt v. Superior Court* (2016) 246 Cal.App.4th 1135, 1146 (*Babbitt*).) These include proceedings concerning: "modification of trust terms;

---

[7]     We grant Schermer's request for judicial notice of the probate court's minute order granting the stay request. (Evid. Code, §§ 452, subds. (c), (d), 459; *Doers v. Golden Gate Bridge etc. Dist.* (1979) 23 Cal.3d 180, 184, fn. 1, disapproved of on other grounds in *Quach v. California Commerce Club, Inc.* (2024) 16 Cal.5th 562, 573, 582, fn. 4.)

[8]     The record on appeal does not include a minute order or reporter's transcript reflecting the trial court's ruling.

10

changes in a designated successor trustee; deviations from trust provisions; authority over the trustee's actions; and the administration of the trust's financial arrangements." (*Estate of Bowles* (2008) 169 Cal.App.4th 684, 695.)

The court with jurisdiction over a trust also has concurrent jurisdiction over "(1) Actions and proceedings to determine the existence of trusts. [¶] (2) Actions and proceedings by or against creditors or debtors of trusts. [¶] (3) Other actions and proceedings involving trustees and third persons." (Prob. Code, § 17000, subd. (b)(1)–(3).)

When "reviewing a judgment based upon a statement of decision following a bench trial, we review questions of law de novo." (*Thompson v. Asimos* (2016) 6 Cal.App.5th 970, 981 (*Thompson*).) We also review "questions as to the jurisdiction and authority of the probate court de novo." (*Estate of Kraus* (2010) 184 Cal.App.4th 103, 112.)

## C.    Discussion

Schermer argues Duboff's claims fell within the exclusive jurisdiction of the probate court. She contends the probate petition is a proceeding concerning the internal affairs of a trust as described by Probate Code section 17200, subdivision (b)(5): "Settling the accounts and passing upon the acts of the trustee, including the exercise of discretionary powers," and subdivision (b)(10): "Appointing or removing a trustee." She further contends that the civil action "just repackages" the probate petition and is therefore also a proceeding that concerns the internal affairs of a trust.

Schermer relies only on the text of these provisions. None of the cases she cites regarding jurisdiction support her contention that this civil case falls under the exclusive

11

jurisdiction of the probate court.  (See *Barefoot v. Jennings* (2020) 8 Cal.5th 822 (*Barefoot*) [concerning amendments to a trust disinheriting a beneficiary and standing to challenge the validity of those amendments]; *Babbitt, supra*, 246 Cal.App.4th 1135 [concerning probate court's authority to order trustee to provide accounting]; *Conservatorship of Irvine* (1995) 40 Cal.App.4th 1334, 1341–1342 [probate court had jurisdiction to consider petition to invalidate a trust agreement or amendment while trustor was still alive], disapproved of on other grounds in *Haggerty v. Thornton* (2024) 15 Cal.5th 729, 742 (*Haggerty*).)

We conclude this civil matter does not concern the internal affairs of a trust.  As the trial court acknowledged, there was factual overlap between the probate and partnership disputes.  However, we disagree that the existence of an overarching dispute between the parties prevented the trial court from considering Duboff's complaint on its own terms.  Sam Schermer chose to create a partnership structure in addition to the Trusts, and vested ownership of the Building in the Partnership, not the Trusts directly.  Although the same family members are involved, the partnership structure created relationships and duties of the players that were similar to those of a trustee and beneficiaries, but which are not identical.  We find no basis to disregard the import of Sam Schermer's decision to use a partnership structure rather than trusts alone.

Schermer thus acted in multiple capacities.  She is a trustee, charged with administering the Trusts.  But the Partnership added another layer of roles as Schermer, as trustee, facilitated the Trusts' participation in the Partnership as general and limited partners.  A trustee "has a duty to administer the trust according to the trust instrument and, except to the extent

12

the trust instrument provides otherwise, according to this division." (Prob. Code, § 16000.) There are specific duties of a trustee set forth in the Probate Code, which include, for example, that the "trustee has a duty to administer the trust solely in the interest of the beneficiaries" (*id*., § 16002, subd. (a)), and "shall administer the trust with reasonable care, skill, and caution under the circumstances then prevailing that a prudent person acting in a like capacity would use in the conduct of an enterprise of like character and with like aims to accomplish the purposes of the trust as determined from the trust instrument." (*Id*., § 16040, subd. (a).) A trustee may also be removed for breaches of duty to the trust or if the trustee is otherwise unfit to administer the trust. (*Id*., § 15642.)

However, the Corporations Code governs limited partnerships and the relationships among limited partners. (See, e.g., §§ 15901.06, 15901.10.) Section 15904.08 sets out the fiduciary duties of a general partner, which the trial found Schermer breached here. The Corporations Code also establishes the bases on which a limited partner may be dissociated from a partnership. (§ 15906.01.) While Schermer's obligations may have been similar in her capacities as a partner and as a trustee, her positions were governed by different statutory schemes.

The instant suit differs from a suit seeking to change a successor trustee under the Probate Code, which only concerns the internal functioning of a trust and not a partnership of trusts and non-trusts. (Cf. *Stewart v. Towse* (1988) 203 Cal.App.3d 425.) The trial court dissociated Schermer as a partner, in all of her capacities. This changed Schermer's roles in the Partnership, but did nothing to change her status with respect to the Trusts. The trial court did not remove Schermer as a trustee of the

13

Trusts and replace her with someone else, which is what Duboff's and Scott's probate petition seeks to do.

Schermer further contends that reversal is warranted because the Legislature did not intend to allow beneficiaries of trusts, such as Duboff, to circumvent probate policies by filing suits in both civil and probate courts. For this contention, she relies on the language in *Barefoot* stating that the Probate Code " ' "was intended to broaden the jurisdiction of the probate court so as to give that court jurisdiction over practically all controversies which might arise between the trustees and those claiming to be beneficiaries under the trust." ' [Citations.]" (*Barefoot, supra*, 8 Cal.5th at p. 827.)

Yet, *Barefoot* concerned whether a disinherited adult child had standing in probate court to assert the invalidity of amendments to her parents' trust that left her without an interest in the trust estate. In this context, the court discussed the prevailing view that "an expansive reading of the standing afforded to trust challenges under [Probate Code] section 17200 'not only makes sense as a matter of judicial economy, but it also recognizes the probate court's inherent power to decide all incidental issues necessary to carry out its express powers to supervise the administration of the trust.' [Citation.]" (*Barefoot, supra*, 8 Cal.5th at p. 828.)

Here, Duboff's complaint did not challenge any aspect of the Trusts or raise challenges that directly concerned the administration of the Trusts. Instead, her complaint challenged the Trusts' conduct of business as the general and limited partners of the Partnership. *Barefoot* does not stand for the proposition that in such a situation, a limited partner's only remedy is to challenge the general or limited partner's conduct in

14

probate court, simply because that partner happens to be a trust acting through its trustee. Indeed, we observe that it is commonplace for general civil departments to hear cases concerning partnerships which have trusts as partners, and, which involve claims that a partner has breached fiduciary duties and harmed the partnership. (See, e.g., *Stoltenberg v. Newman* (2009) 179 Cal.App.4th 287 (*Stoltenberg*) [civil action by limited partner trusts against defendant trust regarding fiduciary and fraud claims]; *Jones v. Wells Fargo Bank* (2003) 112 Cal.App.4th 1527 [civil action by limited partner against trustee, trust beneficiary, and others for breach of fiduciary to partnership and partners]; *Broffman v. Newman* (1989) 213 Cal.App.3d 252 [limited partner action for breach of fiduciary duties against general partner where partnership involved trust].) Schermer provides no legal authority for the proposition that because the partners here included trusts, this suit falls within the probate court's exclusive jurisdiction.

The Legislature has limited the probate court's exclusive jurisdiction to the internal affairs of a trust. We find no basis to conclude that Duboff's purported forum shopping would allow us to expand the probate court's exclusive jurisdiction beyond what the Legislature has specified. (*Haggerty*, *supra*, 15 Cal.5th at p. 741 ["policy arguments . . . are best directed to the Legislature, which may amend the trust laws if it chooses"].)

Schermer also asserts that the need for this case to be heard in the probate court is underscored by the fact that the probate court is focused on carrying out the trustor's intent, which would have resulted in a different remedy here because Sam Schermer designated her, and then her cousin, as successor trustees. She asserts that the trial court's ruling undermined

15

Sam Schermer's intent as trustor because Duboff and Scott now control the Building. However, as noted above, Sam Schermer decided to vest ownership of the Building in a limited partnership, not in a trust or trusts alone. As such, we are not free to ignore the partnership structure or the separate duties and potential remedies that structure created. Schermer cites no legal authority for the proposition that when the same parties are involved in both trust and partnership disputes, only the probate court may adjudicate the partnership dispute in which the trusts are merely players. We are bound by the current text of the statute. (*People v. Palacios* (2024) 101 Cal.App.5th 942, 951 [statute's text's "plain meaning governs" in considering legislative intent].)[9]

Schermer also argues that even assuming the probate court had only concurrent jurisdiction over Duboff's civil complaint, this case "needed to be decided there." Without citation to any legal authorities, Schermer contends that "[n]o reasonable jurist could fail to see the absolute need to have the intertwined remedy issues decided together," and "[n]o reasonable jurist could fail to see the chaos that results from allowing a civil court to award an extreme remedy that would never be warranted if the beneficiary's twin cases were considered together." However, the issue of which court should preside if there was concurrent jurisdiction was presented to the trial court and decided in the context of the motion to transfer the instant matter to the probate court. The trial court provided a reasoned basis for denying that motion and, as explained above, we disagree that

___

[9] Given our conclusion, we need not address Schermer's arguments that she did not waive her jurisdictional objection to the trial court's exclusive jurisdiction.

16

the probate and partnership disputes were indistinguishable. Schermer has not demonstrated the trial court erred in denying the motion to transfer.

## II. Substantial Evidence Supports the Finding that Duboff Had Standing To Assert Derivative Claims as a Limited Partner

Schermer contends there was no substantial evidence to support the trial court's finding that Duboff had standing to sue as a limited partner. We disagree.

### A. Applicable legal principles

Under the Corporations Code, "[a] partner may bring a derivative action to enforce a right of a limited partnership . . . ." (§ 15910.02.) The Corporations Code distinguishes between the rights of a "partner" and the rights of a "transferee." "The only interest of a partner which is transferable is the partner's transferable interest. A transferable interest is personal property." (§ 15907.01.) "A transferee has a right to receive, in accordance with the transfer, distributions to which the transferor would otherwise be entitled." (§ 15907.02, subd. (b).) But a "transfer" does not "entitle the transferee to participate in the management or conduct of the limited partnership's activities . . . ." (*Id*., subd. (a)(3).) Rather, "[u]pon transfer, the transferor retains the rights of a partner other than the interest in distributions transferred and retains all duties and obligations of a partner." (*Id*., subd. (d).) However, "[a] transferee of a partnership interest, including a transferee of a general partner, may become a limited partner if and to the extent that (1) the partnership agreement provides or (2) all general partners and a majority in interest of the limited partners consent." (*Id*., subd. (h).)

17

We review a trial court's factual findings in its statement of decision for substantial evidence. (*SFPP v. Burlington Northern & Santa Fe Ry. Co.* (2004) 121 Cal.App.4th 452, 462.) "Under this deferential standard of review, findings of fact are liberally construed to support the judgment and we consider the evidence in the light most favorable to the prevailing party, drawing all reasonable inferences in support of the findings." (*Thompson*, *supra*, 6 Cal.App.5th at p. 981.) Substantial evidence constitutes "evidence of ponderable legal significance, evidence that is reasonable, credible and of solid value." (*Minnegren v. Nozar* (2016) 4 Cal.App.5th 500, 507.) We do not "reweigh the evidence and are bound by the trial court's credibility determinations." (*Estate of Young* (2008) 160 Cal.App.4th 62, 76 (*Estate of Young*).)

The testimony of one witness, even uncorroborated testimony, may constitute substantial evidence, unless the testimony is inherently unreliable. (*Newman v. Casey* (2024) 99 Cal.App.5th 359, 375; *Plastic Pipe & Fittings Assn. v. California Building Standards Com.* (2004) 124 Cal.App.4th 1390, 1407 (*Plastic Pipe & Fittings Assn.*).)

### B. Discussion

The sole issue decided in the first phase of trial was whether Sam Schermer consented to making his three daughters limited partners. The parties agree that his consent was required under section 15907.02, subdivision (h), because there is no partnership agreement, and only if Duboff is a partner did she have standing to bring a derivative action on behalf of the Partnership. (See § 15910.02.)

Duboff claimed that she and her two sisters became limited partners when their father made three gift transfers to them on December 31, 2008, January 1, 2009, and January 1, 2010. These

18

gifts were memorialized in signed "letters" titled "Transfer of Partnership Interests," which stated: "I, Sam Schermer, . . . hereby transfer and assign by way of gift, the following limited partnership interests in and to the said limited partnership entitled 245 Spalding Partners" and named each of his three daughters.

Schermer contends substantial evidence did not support the trial court's finding that, with these transfers, Sam Schermer intended to make Duboff a limited partner. She addresses the three categories of evidence on which the trial court relied: (1) Duboff's trial testimony; (2) Sam Schermer's gifting history; and (3) the admissions of Schermer and her attorney. We consider each category of evidence.

### 1. Duboff's testimony

Duboff testified that she had at least four conversations with her father in which he indicated he had made her a limited partner. According to Duboff, in the first three conversations, Sam Schermer told her he had made or was making her and her sisters limited partners. At no time during any of these conversations did Sam Schermer use the word "transferee" or "assignee," or discuss any limitations on the gifts. Duboff further testified that around April 2009, when she received her first "K-1" tax document for the Partnership from her accountant, she called her father and asked if it had to do with the Partnership, and he confirmed that it did.

The trial court found that "[b]ased on the court's observation of [Duboff's] testimony and demeanor, and based on the court's consideration of the other testimony and exhibits presented at trial, the court finds that [Duboff's] testimony concerning those conversations with Sam was credible."

19

Schermer contends Duboff's testimony is inherently improbable and, even if it were not, it is insufficient to support the trial court's ruling.  We disagree.  Under the substantial evidence standard of review, "[t]estimony believed by the trial court 'may be rejected only when it is inherently improbable or incredible, i.e., " 'unbelievable *per se*,' " physically impossible or " 'wholly unacceptable to reasonable minds.' " '  [Citation.]" (*McPherson v. EF Intercultural Foundation, Inc.* (2020) 47 Cal.App.5th 243, 257; *Southern California Edison Co. v. Superior Court* (2024) 102 Cal.App.5th 573, 588 [we may not uphold a finding based on inherently improbable evidence].)

Schermer argues that evidence adduced at trial contradicted Duboff's testimony and rendered it incredible or inherently improbable.  This evidence included the lack of witnesses to any communications in which Sam Schermer described the intent behind his gifts, evidence Schermer contends demonstrates that Sam Schermer's past conduct and knowledge suggests he would not have made Duboff and Scott limited partners in the manner Duboff described, and Sam Schermer's statements which cast doubt on the intent of the three gifts to his daughters.  We disagree that this evidence demonstrated the impossibility of Duboff's testimony or rendered it improbable and unworthy of credence, such that the trial court erred in crediting it.

That no one witnessed Duboff's conversations with her father, and the lack of evidence that he told anyone else he was making the sisters partners, does not establish that Duboff's testimony was insufficient.  (See *Plastic Pipe & Fittings Assn.*, *supra*, 124 Cal.App.4th at p. 1407 [single uncorroborated witness can be sufficient under substantial evidence standard].)  There

20

was no evidence, for example, that Sam Schermer never spoke with Duboff alone, or that the conversations *could not* have happened.

Schermer's testimony that her father did not inform her that he was making her a limited partner is similarly not dispositive. (See *Plastic Pipe & Fittings Assn.*, *supra*, 124 Cal.App.4th at p. 1407.) Instead, it was a piece of evidence the trial court was required to evaluate for credibility and weigh. We do not reweigh the evidence on appeal and are bound by the trial court's credibility determinations. (*Estate of Young*, *supra*, 160 Cal.App.4th at p. 76.) Further, even if the court credited this portion of Schermer's testimony, it did not directly contradict Duboff's testimony about *her* conversations with their father, or render those conversations impossible. There was no evidence that Sam Schermer always gave all of his children the same information. Moreover, to the extent the testimony conflicted, it was for the trial court to resolve issues of credibility.

Schermer asserts there was evidence that Sam Schermer wanted the Surviving Trustor's Trust to retain the family investments, and stated its trustee should not be bound by prudent investor rules. She contends these directives would have been inconsistent with Sam Schermer making her sisters limited partners in the Partnership, thereby giving them a say in the management of the Partnership's single asset, the Building. To the extent these decisions were in tension, we disagree that they are so inherently contradictory that they cannot be reconciled, or that they leave open only the possibility that Duboff's testimony was false. The Surviving Trustor's Trust and the Partnership were not the same entity. While the Partnership concerned only

the Building, the Surviving Trustor's Trust corpus was different and included other assets.

Moreover, making Duboff and Scott limited partners in the Partnership did not place them on equal footing with Schermer with respect to the Partnership or the Surviving Trustor's Trust, as it offered them no role in the Surviving Trustor's Trust other than beneficiary, and did not provide them a role equal to that of the general partner in the Partnership. (§ 15904.06, subd. (a) [except as otherwise provided "any matter relating to the activities of the limited partnership may be exclusively decided by the general partner"].) We cannot conclude that Sam Schermer's decision to relieve the trustee of the Surviving Trustor's Trust from complying with prudent investor rules, the direction that the Surviving Trustor's Trust should retain the family investments, or the evidence that Sam Schermer was a "skilled attorney," indicates that the only inference the trial court could permissibly draw from the evidence was that Sam Schermer would not have made Duboff a limited partner and her testimony was therefore untrue.

That Sam Schermer was aware of Duboff's and Schermer's animosity is also not inconsistent with his making them both limited partners. He had previously gifted both sisters voting shares in one company, Schermer Buena Victory, and 20 percent interests in another company, Sam Schermer, Inc., despite knowing of their animosity. And while there was evidence that Duboff and Schermer did not always get along, both also testified that they were working together and getting along around the time of the first two gifts, made one day apart, and their father was aware of this.

22

Likewise, the trial court could reasonably draw multiple inferences from other evidence adduced at trial. That the court drew inferences in favor of Duboff does not render its decision erroneous. This includes Sam Schermer's written statement regarding the 2008 gifts that "[t]his is not a conveyance and instead is a transfer of interest of $12,000 each via notation which I am having notarized today," which the court found was vague and did not indicate his intent; the evidence that Sam Schermer had received assistance from his son-in-law in 2003 when he was considering making the sisters partners but did not consult the son-in-law in 2008, 2009, or 2010; that no writing documented Sam Schermer's intent to make the sisters limited partners except the transfer letters; and the evidence that Sam Schermer was short of cash at the time he made the gifts.

In sum, we conclude that Duboff's testimony was not inherently improbable, physically impossible, or categorically unbelievable. The uncorroborated testimony of a sole witness may be substantial evidence sufficient to affirm a trial court's findings if that testimony is not inherently unreliable. (*Plastic Pipe & Fittings Assn.*, *supra*, 124 Cal.App.4th at p. 1407.) However, Duboff's testimony was not the only evidence. The trial court also considered Sam Schermer's gifting history and Schermer's attorney's admissions.

### 2. Sam Schermer's gifting history

There was evidence at trial that Sam Schermer had previously gifted both Duboff and Schermer 20 percent interests in Sam Schermer, Inc., and voting and non-voting shares in Schermer Buena Victory, two of his other companies. He did not place any restrictions on those gifted interests and shares. The Schermer Buena Victory shares were not memorialized in any

written document.  He also made Schermer and Duboff general partners in AMS Properties, without any conditions.  The trial court reasoned that Sam Schermer's practice of giving gifts of unrestricted interests supported a finding that he did so again in the 2008, 2009, and 2010 partnership interests to Duboff.

On appeal, Schermer argues no inference can be drawn from Sam Schermer's past gifting history because he sometimes gifted restricted interests, such as non-voting shares; he could not have imposed restrictions on gifts of stock; and he never gave voting stock to Scott.  We disagree that, even if true, these factors render the trial court's factual findings unreasonable.  To the extent Schermer argued the past gifting history conclusively demonstrated that Sam Schermer would not have, and did not, gift Duboff limited partnership interests, the evidence that her father's gifting history was, at a minimum, variable with respect to whether the gifted interests were restricted, undermined Schermer's argument.  The trial court could reasonably consider this history in weighing the evidence and assessing the credibility of the witnesses at trial.

Similarly, Schermer contends her father never made their other sister, Scott, a partner, or gifted her voting stock, thus making her a limited partner in 2008, 2009, and 2010 was "out of the blue" and inconsistent with his gifting history.  It was for the factfinder, the trial court, to consider the evidence of Sam Schermer's past practices to determine the intent of the 2008, 2009, and 2010 gifts.  Even if his gifts in those three years were a departure from his past conduct related to Scott, that fact did not conclusively indicate that no inference could be drawn from the evidence of the gifting history in Duboff's favor.

24

### 3. Schermer and her attorney's admissions

The trial court also found that "before and during this litigation, [Schermer] and her attorney made statements admitting that she and [Duboff] are limited partners in the Partnership."

According to the trial court's ruling, evidence was adduced at trial that Schermer signed two declarations stating under oath that she was a limited partner in the Partnership. However, the trial court's ruling acknowledged Schermer's testimony that the declarations were based on her mistaken belief that the Partnership's K-1 tax forms indicated she was a limited partner. The trial court did not appear to rely on these declarations for its ruling.

Instead, the court relied on two letters authored by Schermer's attorney, which were admitted at trial.[10] The attorney's letters were sent to Duboff's counsel, in July 2015 and November 2015, before Duboff filed this lawsuit.

The first letter responded to Duboff's request as a limited partner to inspect and copy records of the Partnership. Schermer's attorney wrote, " 'We have been able to undertake a cursory review of your client's assertions and her standing to make the inspection demand . . . [¶] . . . [¶] Pursuant to Corporation[s] Code 15903.04, *as a limited partner*, Ms. Duboff will be permitted to inspect and copy the information . . . to the extent that such information exists and is maintained by 245 Spalding Partners.' " (Italics added.)

In the second letter, also in response to Duboff's inspection demand, Schermer's attorney wrote: " 'Your client knows who the

---

[10] Neither Schermer's declarations nor the attorney's letters are in the record on appeal.

25

partners are as well as [Schermer] does.  This is yet another attempt to harass, vex, and annoy [Schermer].  The information is readily available from the tax returns . . . .  But to avoid another request, here is the information in alphabetical order as requested.' "  The letter listed Duboff and her sisters as limited partners of the Partnership.

Schermer argues this letter's reference to tax returns establishes her attorney was also mistakenly relying on the K-1 tax forms to determine who was a partner.  She contends there was no evidence that her attorney had personal knowledge of who the partners were, or that he obtained his information from another source, thus the only "reasonable inference" is that the attorney made the same mistake as his client.

The trial court reasoned: "Although [Schermer] explained that she made the statement that she is a limited partner in her declarations by mistake based on the statements in the K-1's, [Schermer] did not offer any competent evidence establishing that her attorney's statements in his two letters that Bonnie is a limited partner were also based on the statements in the K-1's.  Thus, as discussed above, the statements made by [Schermer's] attorney on her behalf are deemed to be admissions of [Schermer], and there is no evidence that her attorney made them by mistake or based on mistaken assumptions obtained from statements in the K-1's."

Schermer contends the trial court should not have considered the attorney's statements because there was no evidence they were based on anything other than Schermer's own mistake.  We find no error in the trial court's reliance on the attorney's admissions.  We draw all reasonable inferences in favor of the judgment.  (*Thompson, supra,* 6 Cal.App.5th at

26

p. 981.)  The trial court could reasonably infer that Schermer's attorney would exercise care in using the term "limited partner," and in interpreting the legal documents in Schermer's possession. The trial court could also reasonably consider the lack of evidence that Schermer's attorney was equally mistaken about whether Duboff was a limited partner.  (See *Bell v. Staacke* (1911) 159 Cal. 193, 196–197 [counsel's statements in letter admissible as admission]; *Fibreboard Paper Products Corp. v. East Bay Union of Machinists* (1964) 227 Cal.App.2d 675, 707 [statements of counsel made prior to trial may constitute admissions].)  That the attorney said the information was " 'readily available from the tax returns' " does not necessarily indicate that the K-1 tax forms were the primary or sole source of the attorney's information, or that the attorney had misinterpreted any relevant tax documents.

Substantial evidence supports the trial court's finding that Duboff was a limited partner who had standing to file derivative claims.

## III.   The Trial Court Did Not Err in Dissociating the Limited Partners

The trial court found Schermer should be dissociated as a limited partner in her individual capacity, and in her capacity as trustee of the Trusts, under section 15906.01, subdivision (b)(5)(C).  Specifically, the trial court found Schermer's conduct made it not "reasonably practicable" for the activities of the Partnership to carry on with her or the entities she controls as limited partners.  The court's ruling was based on Schermer's "grossly negligent and reckless conduct in managing the Spalding building . . . ."  The court observed that "as a limited partner, Defendant Linda Schermer agreed with all the actions

27

she took in her capacity as trustee of the Surviving Trustor's Trust as general partner of the Partnership . . . ." The court cited Schermer's testimony that she believed she had complied with her fiduciary duties as to repairs and took no responsibility for her failure to timely obtain a loan to renovate the Building.

The court further reasoned: "As Duboff states, '[i]f all the trusts are not dissociated, Schermer can simply revote herself as the general partner and the partnership will be back to where it is now.' " The court additionally explained that due to Schermer's breaches of fiduciary duties, her dissociation as an individual, and as the trustee of the limited partner trusts, was warranted under section 15906.01, subdivision (b)(5)(C).

Schermer contends the trial court abused its discretion by dissociating her and the limited partner trusts from the Partnership. She does not contest the court's dissociation of her as trustee of the general partner Surviving Trustor's Trust or that trust as general partner.

## A. Applicable legal principles

California has adopted the Uniform Limited Partnership Act, including provisions regarding dissociation. (*Evans v. Galardi* (1976) 16 Cal.3d 300, 306; see §§ 15900, 15906.01 et seq.) A person may be dissociated as a limited partner by judicial order "upon the occurrence" of certain enumerated events, including "on application by the limited partnership . . . because . . . [¶] . . . [¶] the person engaged in conduct relating to the limited partnership's activities which makes it not reasonably practicable

28

to carry on the activities with the person as limited partner."
(§ 15906.01, subd. (b)(5)(C); see also § 15908.02, subd. (a).)[11]

"[A] trust is a 'person' that may associate in a partnership
. . . ." (*Han v. Hallberg* (2019) 35 Cal.App.5th 621, 624–625; but
see *Presta v. Tepper* (2009) 179 Cal.App.4th 909, 913–914 [trust
itself is not a partner].) However, a "trust cannot act in its own
name and must always act through its trustee . . . ." (*Han*, at
p. 624.) This is because " '[u]nlike a corporation, a trust is not a
legal entity. Legal title to property owned by a trust is held by
the trustee . . . .' ' "A . . . trust . . . is simply a collection of assets
and liabilities. As such, it has no capacity to sue or be sued, or to
defend an action." ' [Citation.]" (*Stoltenberg*, *supra*, 179
Cal.App.4th at p. 293.) "A trust is an arrangement where
' "property is transferred with an intention that it be held and
administered by the transferee (trustee) for the benefit of another
. . . ." ' [Citation.]" (*Godoy v. Linzner* (2024) 106 Cal.App.5th 765,
780.)

## B.    Discussion

The trial court's ruling was not an abuse of discretion. The
court found that Schermer violated the Corporations Code and
caused the Surviving Trustor's Trust to breach its fiduciary
duties as the general partner. In over 14 pages, the statement of
decision recited evidence that Schermer, in her capacity as

---

[11]    As another state court applying the Uniform Limited
Partnership Act has explained, a "main purpose" of the Act "is 'to
prevent mandatory dissolution' of a partnership." (*Robertson v.
Jacobs Cattle Co.* (Neb. 2013) 830 N.W.2d 191, 203.) Thus, where
a partner's conduct would constitute grounds for dissolution of
the partnership *or* dissociation by judicial expulsion, "the court
may in its discretion order either dissociation by expulsion of one
or more partners or dissolution of the partnership." (*Ibid*.)

trustee of the Surviving Trustor's Trust as general partner of the Partnership, engaged in "grossly negligent and reckless conduct in the management" of the Building, self-dealing, intentional misconduct, and a knowing violation of law. Schermer does not contest those factual findings on appeal. Further, the trial court found that Schermer believed her unlawful conduct was proper.

Schermer contends that since the court's findings concerned her conduct as trustee of the Surviving Trustor's Trust, there was no basis to dissociate her as an individual limited partner or the other limited partner trusts. Yet, in considering the feasibility of continuing the Partnership, the trial court was not required to ignore that even without the Surviving Trustor's Trust as the general partner, Schermer controlled four of the six limited partners. Schermer would continue acting as trustee on behalf of the limited partner trusts, and the acrimony between the parties was undisputed. (See *Owen v. Cohen* (1941) 19 Cal.2d 147, 152 ["courts of equity may order the dissolution of a partnership where there are quarrels and disagreements of such a nature and to such extent that all confidence and cooperation between the parties has been destroyed or where one of the parties by his misbehavior materially hinders a proper conduct of the partnership business"]; *Brennan v. Brennan Associates* (Conn. 2009) 977 A.2d 107, 120 [under the Uniform Limited Partnership Act, "an irreparable deterioration of a relationship between partners is a valid basis to order dissolution, and, therefore, is a valid basis for the alternative remedy of dissociation"].)

Likewise, the court was permitted to consider its findings that Schermer's improper conduct on behalf of the Surviving Trustor's Trust lasted for years, was deliberate, and was in bad

faith. It was not arbitrary or outside the bounds of reason for the trial court to conclude that Schermer's continued active participation in the Partnership as an individual limited partner or on behalf of the limited partner trusts she controlled as trustee would make it not reasonably practicable for the Partnership activities to carry on. Irrespective of Schermer's potential testimony about whether she would attempt to reinstate herself as the general partner in some capacity, the trial court had a record of nearly a decade of her conduct that it could reasonably weigh and consider in deciding on an appropriate remedy.

As we understand her arguments, Schermer asserts the trial court abused its discretion by failing to employ a more limited remedy. She contends the trial court should not have dissociated her individual interest, because if the limited partner trusts were dissociated, she would no longer control a majority of the interests that were permitted to select a new general partner. She also contends that if the court in the probate proceeding removed her as trustee of the Trusts, then dissociating them would become unnecessary. She likewise argues that despite the fact that the Trusts could only act through the trustee—Schermer—the court should not have dissociated the Marital and Deceased Trustor's Trusts because Schermer's objectionable conduct was taken only in her capacity as the trustee of the Surviving Trustor's Trust.

That the trial court could have reasonably chosen a different remedy does not render the one it selected an abuse of discretion. (See e.g., *Sunset Farms, Inc. v. Superior Court* (1935) 9 Cal.App.2d 389, 405 [rejecting argument that appointment of receiver was erroneous because other remedies were available].) As explained above, the trial court's decision to dissociate the limited partner trusts and Schermer as an individual limited

31

partner was based on its detailed findings that Schermer had engaged in deliberate unlawful conduct, in bad faith, that caused the Partnership significant damage. The court thus reasoned that Schermer's continued involvement in the Partnership in any capacity other than a holder of economic interests would render it not reasonably practicable for the Partnership's activities to carry on. Further, the trial court could reasonably fashion a remedy based on the status of the parties as they stood at the time, not based on an anticipated change of trustee that would take place in the probate proceedings. Schermer fails to establish that the dissociation of her and the trusts as limited partners was an abuse of discretion. (*Hernandez v. First Student, Inc.* (2019) 37 Cal.App.5th 270, 277 [" ' "the party asserting trial court error may not . . . rest on the bare assertion of error but must present argument and legal authority on each point raised" ' "].)

## IV. Damages Award

Duboff sought, and the court awarded, monetary damages on the first cause of action for breach of fiduciary duty. The court awarded: (1) $77,000 that the Partnership paid Schermer in management fees; (2) the value of Schermer's rent-free apartment in the Building after she became successor trustee to the Surviving Trustor's Trust; and (3) the Partnership's lost rental revenues. Schermer asserts trial court error as to each category of damages. We find no basis for reversal.

We review the factual findings underlying the trial court's award of damages for substantial evidence. (*Coziahr v. Otay Water Dist.* (2024) 103 Cal.App.5th 785, 820; see also *Atkins v. City of Los Angeles* (2017) 8 Cal.App.5th 696, 738 (*Atkins*) [amount of damages is a fact question and will not be disturbed if supported by substantial evidence].)

32

" 'The law requires only that some reasonable basis of computation of damages be used, and the damages may be computed even if the result reached is an approximation.' " (*Sargon Enterprises, Inc. v. University of Southern California* (2012) 55 Cal.4th 747, 774.) An approximation especially may be permissible where the defendant's wrongful acts have created the difficulty in proving the amount of damages or have caused the other party not to receive profits or other sums to which the party would have been entitled. (*Id*. at p. 775.) However, "[a] damage award must not be ' " 'speculative, remote, imaginary, contingent, or merely possible.' " ' [Citations.]" (*Atkins*, *supra*, 8 Cal.App.5th at p. 738.)

### A.    $77,000 in management fees

Schermer contends substantial evidence did not support the trial court's $77,000 restitution award. The trial court found Schermer violated section 15904.06, subdivision (f), which provides that "[a] general partner is not entitled to remuneration for services performed for the partnership." The court found that Schermer improperly received the $77,000 when she was the trustee of the Surviving Trustor's Trust and was therefore acting as the Partnership's general partner.

Schermer contends there is no evidence of how much, if any, of the $77,000 was paid to her during the relevant period. She became the successor trustee of the general partner trust, the Surviving Trustor's Trust, in August 2014. Before that, she served as property manager and was thus entitled to compensation in that capacity. She asserts there is no evidence she received $77,000 during the period she was a trustee, such that section 15904.06, subdivision (f) applied. She also maintains

that the tax returns show this amount was paid to "officers" in the plural, so to both her *and* her father.

In 2014, the Partnership paid Sam Schermer, Inc. $105,000, and Schermer testified that a "portion" of this was to compensate her for management services regarding the Building. However, she did not know how much she was owed and had not maintained any paperwork, as this was "up to the [Partnership's] accountant."

A 2014 tax return for Sam Schermer, Inc., on a line reading "Compensation of Officers," states: $77,000. At trial, opposing counsel asked Schermer about this amount: "So that was a payment made to either you or your father or the two of you combined; correct?" Schermer replied, "I would assume so." Schermer further testified that this was a payment for management services that *she* and her father provided the Partnership.

Schermer has not established trial court error. She testified that part of the $105,000 was to pay her for management services. The trial court awarded $77,000 based on the tax return and her testimony that she received some compensation for providing management services in 2014. Her testimony allowed for the possibility that the $77,000 was a payment made to her alone, *or* her father, or to both of them. She further testified that she believed she was entitled to a management fee not only for 2014, but for 2015 and subsequent years. She did not argue below, as she does on appeal, that some portion of the $77,000 was warranted because it was for services she provided *before* becoming trustee of the Surviving Trustor's Trust. Indeed, Schermer testified that she did not maintain paperwork to reflect the amounts to which she was entitled for

management fees.  She has not established that $77,000 was not a " 'reasonable approximation' " of the damages.  (*JMR Construction Corp. v. Environmental Assessment & Remediation Management, Inc.* (2015) 243 Cal.App.4th 571, 585.)

### B.    Rent-free apartment

Schermer further contends the trial court improperly awarded damages for her use of an apartment in the Building after she became successor trustee of the Surviving Trustor's Trust.  She does not contest the amount, but rather the fact of a damages award at all.

The trial court awarded the Partnership damages for the fair rental value of Schermer's apartment for the period between August 2014 and July 2022.  Like the management fee, the trial court determined that under section 15904.06, subdivision (f), Schermer was not entitled to a rent-free apartment as compensation for her services after she became trustee of the general partner trust.

Schermer argues the Surviving Trustor's Trust was the "general partner . . . not entitled to remuneration" under section 15904.06, subdivision (f), not her.  She asserts that she "received the apartment in her capacity as resident manager, a division of roles and compensation expressly authorized in the original partnership agreement, the trust documents, and when [her father] hired [her] for that role."[12]

---

[12]    There is no written partnership agreement.  To the extent she refers to a 1992 partnership agreement for AMS Properties, as she did in the trial court, we also find no reason it would apply, particularly in the absence of any such argument on appeal.  AMS Properties was the previous owner of the Building.

That Schermer was authorized to receive a rent-free apartment in the trust documents or the superseded partnership agreement does not establish that section 15904.06, subdivision (f)'s prohibition applicable to general partners did not apply.  The trial court could reasonably determine that once Schermer became the trustee of the Surviving Trustor's Trust, serving as the general partner of the Partnership, there was no evidence that she ever provided any services to the Partnership, or received any benefits, in any other capacity except as on behalf of the general partner trust.  Further, there was no partnership agreement that would allow her to individually receive remuneration.  Schermer has provided no argument or authority to support the conclusion that the trial court erred in considering the evidence and determining that the receipt of the rent-free

---

We assume Schermer is referring to language in the Surviving Trustor's Trust under "Successor Trustees" and "Dual Capacity of Trustee," as follows: "While she is serving as Trustee, LINDA J. SCHERMER may continue to serve as rental agent and property manager for any real property which is an asset of this Trust and may continue to be paid for her services as property manager . . . I specifically authorize LINDA J. SCHERMER to serve as Trustee notwithstanding her potential dual compensation as Trustee and as rental agent and property manager and notwithstanding the potential for conflicts of interest that may arise . . . ."  However, we find no reason this stated trustor intent applies here to contravene section 15904.06, subdivision (f), and Schermer points to no relevant authority.

Schermer also cites evidence that she was the property manager and thus allowed to live in the Building rent-free since 2006.  However, this evidence does not establish that her right to live rent-free was not terminated when she became successor trustee.

36

apartment inured to Schermer in her role as trustee of the Surviving Trustor's Trust, serving as the general partner of the Partnership, thereby violating section 15904.06, subdivision (f).

## C. Damages based on gross lost rental revenues

The trial court awarded damages for lost rental revenues, plus prejudgment interest, based on Schermer's failure to make apartment units habitable and rentable through renovation. Schermer disputes the trial court's method of calculating these damages, arguing that the court "impermissibly awarded *gross* 'lost rental revenues' rather than estimated lost profits (i.e., estimated revenues minus expenses)." Because the uncontroverted evidence is that both methods would have reached the same result, and an approximation was permissible, we find no basis to reverse.

The trial court relied on the testimony and calculations of Duboff's damages expert, Wesley Nutten. Schermer argues Nutten impermissibly failed to consider expenses the Partnership would have incurred if it had rented the vacant units, such as utilities, turnover costs, and costs of maintenance. Schermer further contends the proper measure of damages in a case involving a business is net profits, not gross revenues.[13]

However, Schermer fails to establish that had lost profits been the measure of damages rather than lost rental revenue, the result would have been different. The trial court admitted into

---

[13] We disagree with Duboff's argument that Schermer waived these arguments by failing to challenge the expert's opinions in her closing brief. Schermer preserved the argument for appellate review by raising it in her motion for new trial. (*Navigators Specialty Ins. Co. v. Moorefield Construction, Inc.* (2016) 6 Cal.App.5th 1258, 1279, fn. 2.)

37

evidence Nutten's testimony comparing his "lost rents" analysis with a "lost profits-type calculation." The testimony explained that "the lost rent calculation, ignoring the expense side of the equation, results in the *same exact answer* as the lost profits calculation." (Italics added.) Schermer did not present any evidence to the contrary. It is undisputed that Schermer did not provide any expert opinion or other evidence that the amount Nutten calculated was not a reasonable approximation of the damages. On appeal, Schermer essentially contends Nutten's testimony was not credible to the extent he explained that the lost profits and lost rental revenue calculations would yield the same results. However, it was for the trial court as the factfinder to determine the credibility of witness testimony, including expert testimony. (*People v. Poulsom* (2013) 213 Cal.App.4th 501, 518.) Schermer has not established that Nutten's conclusions were invalid as a matter of law or unsupported by substantial evidence.

In sum, we find no reversible error.

## DISPOSITION

The judgment is affirmed.  Plaintiff Bonnie Duboff is awarded her costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

ADAMS, J.

We concur:

EDMON, P. J.

EGERTON, J.